**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

     v.                                               1:24-cr-00361 (AMN)

ANDRE DECKER,

                    Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **United States Attorney for the** <br> **Northern District of New York** <br> 445 Broadway – Room 218 <br> Albany, New York 12207 <br> *Counsel for the Government* | **ASHLYN JESSICA MIRANDA, ESQ.** <br> **MIKAYLA ESPINOSA, ESQ.** <br> Assistant United States Attorneys |
| **Frost, Kavanaugh Law Firm** <br> 287 North Greenbush Road <br> Troy, New York 12180 <br> *Counsel for Defendant* | **ARTHUR R. FROST, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.   INTRODUCTION**

On June 13, 2025, following a four-day trial, a unanimous jury convicted defendant Andre Decker ("Defendant") of one count of possession of firearms by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Dkt. Nos. 1, 97, 103. Presently before the Court is Defendant's renewed motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure

("Rule 29").[1]  Dkt. Nos. 107, 137 (the "Motion"); *see also* Dkt. No. 138.[2]  For the reasons set forth below, Defendant's Motion is denied.

## II.     SUMMMARY OF THE EVIDENCE AT TRIAL

The following summary reflects only some of the evidence adduced at trial, as necessary to address the Motion, and presents that evidence in the light most favorable to the Government. *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020).

In the summer of 2023, Defendant completed a federal prison sentence and began a term of supervised release in the Southern District of New York.[3]  Dkt. No. 124 at 206:6-208:17. Defendant's probation officer tried to meet with him for several months, without success. *Id.* at 214:8-215:8.  In November 2023, the probation officer requested and received an arrest warrant from the United States District Court for the Southern District of New York.  *Id.* at 215:9-216:10.

The United States Marshals Service ("USMS") was tasked with apprehending Defendant. Dkt. No. 125 at 8:6-11:6.  After using various investigative methods—including in-person surveillance, analysis of location data from Defendant's cell phone, and analysis of numerous transactions from Defendant's public benefits card—a USMS task force came to believe that Defendant was staying in the Northern District of New York, at his girlfriend's apartment in Albany.  *Id.* at 11:7-27:22.  The task force obtained a warrant to search the premises for Defendant.

---

[1] Defendant previously moved for a judgment of acquittal at the end of the Government's case and at the close of all proof; the Court denied both motions.  Dkt. No. 126 at 63:19-65:19; *id.* at 70:6-71:2.  Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[2] Defendant declined to submit a reply in further support.  *See generally* Docket Sheet.

[3] This sentence was the result of Defendant's prior conviction for violating 18 U.S.C. § 922(g)(1). Dkt. No. 28-1.  The Court sustained Defendant's objection to admitting certain evidence regarding this conviction, Dkt. No. 90 at 2-5, and the parties stipulated that, prior to November 2023, Defendant had been convicted of a felony, knew he had been convicted of a felony, and had served more than one year in prison as a result, Dkt. No. 99.

*Id.* at 27:23-28:10.

The task force executed the warrant at approximately 6:00 a.m. on November 27, 2023. *Id.* at 28:11-34:25. After Ms. McKenzie answered the door, members of the task force entered the apartment and noticed an open second story window at the back of the apartment. *Id.* at 35:1-48:11. Defendant was eventually spotted hiding in a neighboring property, in only his boxers, despite the cold weather. *Id.* at 48:12-51:23; *id.* at 65:24-66:22; *id.* at 148:8-150:21. After continued pursuit, the task force was able to arrest Defendant and observed injuries to his bare feet. *Id.* at 150:22-155:24; Government Exhibit 10.

Cell phone data indicated that Defendant's phone had been regularly present during nighttime hours at the apartment for weeks prior to his arrest. *See, e.g., id.* at 132:24-133:17. Cell phone data further indicated that Defendant's phone was present in the apartment on November 26, 2023, including shortly before midnight, and that the phone was still there at approximately 7:00 a.m. the next morning. *Id.* at 142:14-144:5. At that time, the task force observed Defendant's phone charging on a stand in a bedroom, called the phone, and seized the phone after it rang. *Id.* at 60:2-17; Government Exhibit 11-J. The task force also recovered from the bedroom Defendant's public benefits card, Bureau of Prisons identification card,[4] and mail addressed to him. Dkt. No. 125 at 55:4-57:5. Directly in front of the bedroom, the task force found a "go bag" packed with, *inter alia*, sets of men's clothes. *Id.* at 58:3-59:8. The task force concluded that the bedroom was shared by Defendant and Ms. McKenzie. *See, e.g., id.* at 45:13-17.

In the closet of the bedroom, the task force found two bags, each with a firearm. *Id.* at

---

[4] Based on testimony from Defendant's probation officer that Defendant had acquired neither employment nor state-issued identification while on supervised release, Dkt. No. 124 at 211:8-212:4, the Government argued in closing that these items constituted Defendant's only known source of income and identification, Dkt. No. 126 at 112:6-18.

3

158:9-23. Subsequent forensic analysis determined that multiple locations on each firearm contained Defendant's DNA. *See, e.g., id.* at 222:7-19; *id.* at 223:3-17; *see also* Dkt. No. 138 at 4 (detailing DNA evidence).

Ms. McKenzie testified, *inter alia*, that Defendant began staying with her in or about September 2023; that he stayed with her several times a week; that he only slept in their shared bedroom; that he kept his belongings in that bedroom, including his cell phone and "[s]urvival bag type stuff[;]" and that Defendant spent time in Ms. McKenzie's apartment when she was not there. Dkt. No. 126 at 11:17-13:19. Ms. McKenzie further testified that she was aware that the firearms were in the apartment; that Defendant had brought the firearms into her apartment; that the firearms were his; and that she had seen Defendant leave and return to the apartment with the firearms.[5] *Id.* at 23:12-24:18.

Defendant exercised his constitutional right not to testify at trial. *Id.* at 65:20-67:18.

### III. STANDARD OF REVIEW

Rule 29 of the Federal Rules of Criminal Procedure permits a defendant to move for "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). However, a defendant who challenges the sufficiency of evidence "bears a heavy burden" "[b]ecause of the strong deference to which jury verdicts are entitled in our justice system." *United States v. Osuba*, 67 F.4th 56, 61 (2d Cir. 2023) (first quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003); and then citing *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021)).

Given this "exceedingly deferential" standard of review, *United States v. Gahagen*, 44

---

[5] Shortly before her testimony at trial, Ms. McKenzie entered into an immunity agreement with the federal government and provided the testimony noted above; she was questioned about the immunity agreement on both direct and cross examination. *Id.* at 9:21-10:1; *id.* at 25:2-26:24.

4

F.4th 99, 108 (2d Cir. 2022) (citation omitted), a court evaluating the sufficiency of evidence is "required to draw all permissible inferences in favor of the [G]overnment and resolve all issues of credibility in favor of the jury's verdict," *Willis*, 14 F.4th at 181 (citation omitted).  A court must also consider the evidence "in its totality, 'as each fact may gain color from others.'" *United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021) (citation omitted).  Importantly, "[t]hese principles apply whether the evidence being reviewed is direct or circumstantial." *United States v. Chow*, 993 F.3d 125, 135 (2d Cir. 2021) (citation omitted).  Ultimately, "[a] jury verdict must be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Gahagen*, 44 F.4th at 108 (second alteration in original) (citations omitted).

## IV.    DISCUSSION

The Motion challenges the sufficiency of the evidence offered at trial by the Government to prove one of the four elements of Defendant's crime of conviction: knowing possession.  Dkt. No. 107 at 2; Dkt. No. 137-1 at 3.

Defendant's challenge fails.  Defendant first argues that the Government offered no direct evidence that he knowingly possessed the firearms and could not prove his actual possession of any firearm.  Dkt. No. 107 at 2; Dkt. No. 137-1 at 3, 6.  However, neither direct evidence nor actual possession is required.  *See, e.g., Willis*, 14 F.4th at 181 ("At trial, the government pursued theories of constructive possession.  'Constructive possession exists when a person has the power and intention to exercise dominion and control' over the contraband in question and may be shown by direct or circumstantial evidence.") (citation omitted) (affirming, *inter alia*, 18 U.S.C. § 922(g)(1) convictions following district court's denial of Rule 29 motions); *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("The government need not prove that [defendant] physically possessed

5

the firearm to establish a 922(g) violation; proof of constructive possession is sufficient. . . . and may be shown by direct or circumstantial evidence.") (citations omitted) (affirming 18 U.S.C. § 922(g)(1) conviction following district court's denial of Rule 29 motion); *see also Henderson v. United States*, 575 U.S. 622, 626 (2015) ("Section 922(g) proscribes possession alone, but covers possession in every form. . . . encompassing what the criminal law recognizes as 'actual' and 'constructive' possession alike. . . . Section 922(g) thus prevents a felon not only from holding his firearms himself but also from maintaining control over those guns in the hands of others.") (citations omitted). And knowledge can be proven through circumstantial evidence. *See, e.g., United States v. MacPherson*, 424 F.3d 183, 189-90 (2d Cir. 2005) ("[T]he *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom. . . . Indeed, the law draws no distinction between direct and circumstantial evidence in requiring the [G]overnment to carry its burden of proof.") (citations omitted).

The core of Defendant's remaining arguments is that if the jury had drawn his preferred inferences from certain evidence, the jury could also have concluded that he did not constructively possess the firearms for which he was convicted. *See generally* Dkt. No. 107; Dkt. No. 137-1. While this may be true, it is immaterial to the Court's analysis under Rule 29. *See, e.g., MacPherson*, 424 F.3d at 190 ("The possibility that inferences consistent with innocence as well as with guilt might be drawn from circumstantial evidence is of no matter to sufficiency analysis because 'it is the task of the jury, not the court, to choose among competing inferences.'") (citation omitted). In contrast, the evidence adduced at trial was sufficient for the jury to find that Defendant knowingly possessed the firearms. *See, e.g., Willis*, 14 F.4th at 182 ("[T]he government was not required to prove that the contraband was not subject to the control of others, because possession

need not be exclusive, and the jury was not required to accept [defendant]'s alternative explanation of innocence. . . . In other words, the fact that others may have also possessed the keys, drugs, and weapons does not preclude a finding that [defendant] did so as well.") (citations omitted); *Payton*, 159 F.3d at 56 ("The government need not disprove that the weapon was subject to the dominion and control of others.") (citation omitted); *see also Landesman*, 17 F.4th at 319 ("[T]he Government need not negate every theory of innocence.") (citation omitted).

    As detailed above, *see supra* Section II, that evidence showed that at approximately 7:00 a.m. in late November 2023, task force officers located Defendant wearing only his boxers and with injuries to his bare feet, just outside a second-story apartment—with an open window—where Defendant regularly stayed overnight. Numerous of Defendant's possessions were still in a bedroom of that apartment, including his mail and only known cell phone, identification, and source of funds. *United States v. Facen*, 812 F.3d 280, 288 (2d Cir. 2016) ("The jury was not required to accept [defendant]'s version of his connection with the location, and there was sufficient evidence to permit the jury to adopt the competing interpretation—that he had a substantial, long-term connection to the house as evidenced by the presence there of his mail and important personal documents.") (affirming 18 U.S.C. § 922(g)(1) conviction following district court's denial of Rule 29 challenge to that conviction). Additionally, Defendant's DNA was retrieved from multiple locations on both of the firearms kept in the bedroom closet and there was testimony that, *inter alia*, the firearms were Defendant's and that Defendant transported the firearms into and out of the apartment. *Facen*, 812 F.3d at 287 ("'[M]ere presence at the location of contraband does not establish possession.' . . . However, 'presence under a particular set of circumstances' from which a reasonable jury could conclude that the defendant constructively possessed contraband located there can support a conviction.") (first quoting *United States v. Rios,*

856 F.2d 493, 496 (2d Cir.1988); and then quoting *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cir. 1992)).

In short, "[t]his evidence could easily convince a rational jury, beyond a reasonable doubt, that [Defendant] had 'the power and intention to exercise dominion and control over' the gun[s]" seized from the bedroom where he stayed. *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (quoting *United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002)) (affirming 18 U.S.C. § 922(g)(1) conviction following district court's denial of Rule 29 motion). As a result, the Court denies Defendant's Motion. *Gahagen*, 44 F.4th at 108; *Willis*, 14 F.4th at 181.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's Motion, Dkt. Nos. 107, 137, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 5, 2026
Albany, New York

_____
Anne M. Nardacci
U.S. District Judge